struction favorable to the heir-at-law, is a question to be decided by them. Their former decisions cannot be reconciled. Some one of them must be overruled and the others established; and if their own tribunals have done this, it is not for this court to criticise or doubt the correctness of their decision. The legislature of this state in 1833 have cut the knot as to all wills made since that time, by abolishing the rule altogether, and declaring that "all devises of real estate shall pass the whole estate of the testator in the premises, although there be no word of inheritance, unless it appear by a devise over or other words of limitation, that the testator intended to devise a less estate."

This will was made before the passage of this act, and has been twice before the supreme court of Pennsylvania. In the argument of the case of Weidman v. Maish, 16 Pa. St. 510, the introductory clause in the will does not appear to have been relied on, there being other expressions in it which, it was contended, justified the construction that an estate in fee was intended. The opinion of the court considers those arguments, disposing of the introductory clause in a single sentence. In the case of Schriver v. Meyer, 19 Pa. St. 88, the case turned entirely on the effect to be given to this introductory clause. A solemn decision of the supreme court supported either view of the question,—the case of French v. McIlhenny, 2 Bin. 13, on one side, and Steele v. Thompson, 14 Serg. & R. 89, on the other: but each decided by a divided court; Judges Yeates, Breckenridge and Duncan on one side, and Chief Justices Tilghman and Gibson on the other. In such a contest who is to decide? Not the courts of the United States. "Non nostrum est tantas componere lites." The supreme court of the state have met the question and have decided it. After the able opinion delivered on the occasion of Schriver v. Meyer, by Mr. Justice Lowrie for the court, and Mr. Justice Gibson dissenting, further discussion of the merits of the question would be superfluous—all has been said that can be said on either side.

Instead, therefore, of again discussing this moot question, this court feel that it is their duty to follow what now appears at last to be the settled doctrine on the subject. In addition to the early case of French v. McIlhenny (1809) 2 Bin. 13, we have now Schriver v. Meyer, 19 Pa. St. 87, Wood v. Hills, Id. 513, and Shinn v. Holmes, 25 Pa. St. 142, all concurring. The authorities are no longer in equilibrio. The question is settled, and should not be again disturbed. It will soon become obsolete under the wise legislation abolishing the old common law rule, which subverted the intention of the testator to subserve the policy of English institutions. The courts of Pennsylvania will of course adhere to the rule, as settled by their own highest tribunal.

We are not disposed to encourage cases like the present. It is an easy thing under the transparent contrivance of a transfer to John Doe or John Smith (supposed to reside in another state), to bring every question of title to real property before the courts of the United States. This is the last of many cases, and I hope will continue to be the last, where titles decided in the state courts, after years of exhausting litigation, have been thus transferred and the litigation renewed, in the vain hope that the courts of the United States will assume to reverse the supposed errors of the state tribunals in questions of real property in dispute between their own citizens.

In such cases it is our duty to pronounce the law of Pennsylvania, as defined by her own legislature and judiciary, and not to assume the position of umpire and pronounce the opinion of even the ablest minority of her judges entitled to more respect than that of the majority, and thus add to the confusion and uncertainty of titles. It would be a humiliating spectacle if this court should, under one rule of construction, deliver the land to the heir-at-law, who would probably be turned out of possession immediately by the devisee, in an action brought in another forum. Such would, I doubt not, be the result of a judgment for plaintiff in this case; and such a collision of judicial authority can only be avoided by the course now pursued.

Pease v. Peck (Sup. Ct. U. S.) 18 How. [59 U. S.] 598, which enumerates certain instances as exceptions to the rule of adhering to state decisions, does not apply to the present.

Judgment accordingly.

---

SMITH (SLACUM v.). See Case No. 12,936.

---

## Case No. 13,109.

### SMITH v. SMITH.

[Cited in Carr v. Gale, Case No. 2,435. Nowhere reported; opinion not now accessible.]

---

SMITH v. The SOUTHWEST. See Case No. 13,191.

SMITH (SPEED v.). See Case No. 13,226.

SMITH (STEWART v.). See Case No. 13,436.

SMITH (STOKELY v.). See Case No. 13,473.

---

## Case No. 13,110.

### SMITH v. STOOPS.

[1 Cranch, C. C. 238.] [1]

Circuit Court, District of Columbia. June Term, 1805.

PLEADING AT LAW—WHEN STATUTE OF LIMITATIONS MAY BE PLEADED.

After office judgment the court will not receive a plea of the statuate of limitations.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

Mr. Edward J. Lee moved to set aside the office judgment by pleading the statute of limitations. Refused; the court saying that it had always been refused. See Hooff v. Herbert (November, 1803 [Case No. 6,670]).

In the case of Carne v. McLean [Case No. 2,416], at this term, THE COURT ordered the plea of limitations to be struck out, it having been filed after office judgment.

FITZHUGH, Circuit Judge, contra.

---

SMITH (STRONG v.). See Case No. 13,544.

---

## Case No. 13,111.

### SMITH et al. v. STURGIS et al.

[3 Ben. 330.] [1]

District Court, S. D. New York. June, 1869.

#### COLLISION—STALE CLAIM.

Where a libel was filed on March 31st, 1866, against the owners of a steam-tug, to recover damages for the sinking of a schooner by her, on December 28th, 1859, the tug having been for more than a year after the collision within the district, and her owners having been residents of the district, or carrying on business therein, and no excuse having been shown for the delay of six years and a quarter in commencing the suit: *held*, that the claim was barred by its staleness.

[Cited in Southard v. Brady, 36 Fed. 561.]

[This was a libel by Jonas Smith and others, owners of the Yankee, against Russell Sturgis and others, owners of the Colonel Satterly, to recover damages for injury to the Yankee, resulting from a collision between the two vessels.]

Beebe, Donohue & Cooke, for libellants.
William Allen Butler, for claimants.

BLATCHFORD, District Judge. This is a libel, sworn to on the 29th of June, 1865, and filed on the 31st of March, 1866, against six respondents, as owners of the steam-tug Yankee, to recover the sum of $19,000, as the damages sustained by the libellants, owners of the schooner Colonel Satterly, by a collision, which occurred between the two vessels on the 28th of December, 1859, in the lower bay of New York. Only three of the respondents were served with process, and one of them, Sturgis, has answered for himself and the others. One of the defences set up in the answer is, that the cause of action did not accrue within six years before its commencement, and that, by reason of the neglect of the libellants to prosecute the action, the demand has become stale, and ought not in equity to be enforced against the respondents, many of them having lived and been almost daily within the jurisdiction of this court since the time of the collision. One or more of the respondents had ceased to live when the libel was filed. The Yan-

kee, for more than a year after the collision, was daily in the port of New York, employed in the service of the respondents. In 1861, she went into the employ of the United States, under a charter, and she was afterwards sold to the United States. All of the respondents, while they owned her and lived, either resided in the city of New York, and carried on business there, or frequented it in the way of business. The delay on the part of the libellants in bringing suit seems to have been without any plausible excuse. The written and verbal communications set up by the libellants as having passed between their legal adviser and Sturgis, on the subject, proved abortive, and were suspended, long before the libel was filed. The case is one of deliberate and inexcusable laches and staleness. It is shown that two or three of those who were on board the Yankee at the time had disappeared, beyond recall, before the libel was filed. The testimony of those witnesses who have been produced on the part of the Yankee is so in conflict with the testimony of the witnesses for the libellants, as to make it incumbent on the court to give no advantage to the libellants which they may have secured to themselves by the delay in bringing their suit. The six years and a quarter which elapsed before the libel was filed, not being excused, I must hold the claim to be barred by its staleness. The Sarah Ann [Case No. 12,342]; Joy v. Allen [Id. 7,552]; Jay v. Allen [Id. 7,235]. The libel is dismissed, with costs.

---

## Case No. 13,112.

### SMITH et al. v. SWORMSTEDT et al.

[5 McLean, 369.] [1]

Circuit Court, D. Ohio. Oct. Term, 1852. [2]

RELIGIOUS SOCIETIES — CHURCH DIVISION — BOOK CONCERN—BENEFICIARIES—LAPSED CHARITY.

1. The general conference of the Methodist Episcopal Church is a delegated or representative body, with limited constitutional powers; and possesses no authority, directly or indirectly, to divide the Church.

[See Bascom v. Lane, Case No. 1,089.]

2. In the adoption of the "Plan of Separation" in 1844, there was no claim to, or exercise of, such a power.

3. As the general conference is prohibited from any application of the produce of the Book Concern, except for a specified purpose, and in a specified manner; and as the annual conferences have refused to remove this prohibition, by changing or modifying the sixth restrictive rule, the general conference has no power to apportion or divide the concern, or its produce, except as provided for by said rule.

4. Said Book Concern is a charity, devoted expressly to the use and benefit of the traveling, supernumerary, and superannuated preachers of the Methodist Episcopal Church, their wives, widows, and children, continuing in it as an organized Church; and any individual, or

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [Reversed in 16 How. (57 U. S.) 288.]